IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-426-D

| | | |
|---|---|---|
| RHONDA ROSS POPE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| PHILLIP CARROLL FARLAND, | ) | |
| | ) | |
| Defendant. | ) | |

On August 19, 2019, Rhonda Pope ("Pope" or "plaintiff") filed a complaint in Wake County Superior Court against Phillip Farland ("Farland" or "defendant") [D.E. 1-1]. In her complaint, Pope alleges claims under North Carolina law for defamation, slander, interference with contract, intentional and negligent infliction of emotional distress, and obstruction of justice. See Compl. [D.E. 1-1] 13–23. The claims concern Farland's statements to a United States Department of Agriculture ("USDA") investigator, who was investigating Pope for alleged misconduct as a USDA employee. See id. At the end of the investigation, the USDA terminated Pope's employment. See id. On September 25, 2019, Farland timely removed the action to this court under 28 U.S.C. § 1442(a)(1) [D.E. 1].[1] On October 15, 2019, Pope moved to remand the action [D.E. 10] and filed a memorandum in support [D.E. 11]. On November 5, 2019, Farland responded in opposition [D.E. 12] and filed documents [D.E. 13]. On November 19, 2019, Pope replied [D.E. 14]. On December

---

[1] A defendant must file a notice of removal for a civil action within 30 days following defendant's receipt of "any information . . . , whether communicated in a formal or informal manner," that alerts the defendant to the possibility of removal. Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC, 865 F.3d 181, 186–87 (4th Cir. 2017) (quotation omitted); see 28 U.S.C. § 1446(b); Yarnevic v. Brink's, Inc., 102 F.3d 753, 755 (4th Cir. 1996).

2, 2019, Farland moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure [D.E. 16] and filed a memorandum in support [D.E. 17]. On February 3, 2020, Pope responded in opposition [D.E. 21]. On the same date, Pope moved to amend her complaint [D.E. 22], and filed a memorandum in support [D.E. 23]. On February 18, 2020, Farland replied to Pope's response to the motion to dismiss [D.E. 25]. As explained below, the court grants Pope's motion to remand and dismisses without prejudice Farland's motion to dismiss and Pope's motion to amend.

I.

Pope is a former North Carolina Farm Service Agency ("FSA") employee who was terminated in November 2018. See Resp. [D.E. 12] 3, 6.[2] The FSA is part of the USDA. See id. at 4. Until his retirement in 2016, Farland worked at the USDA as a district director in Wake County and supervised Pope. See id.; [D.E. 13-1] 1. In 2018, the USDA directed FSA investigator David Simmons ("Simmons") to examine whether Pope submitted inaccurate time and attendance reports. See Resp. at 4. Simmons's investigation also examined whether a reference letter, allegedly written and signed by Farland and distributed by Pope, was fraudulent. See id.

As part of his investigation, Simmons contacted Farland to discuss the disputed reference letter. See id. at 5. During this discussion, Simmons "directed [Farland] to answer questions regarding the purported reference letter, directed him to sign a [s]tatement that reflected the answers provided, and directed him to avoid interference with the federal investigation." Id.; see [D.E. 13] 2; [D.E. 13-1] 2. Farland gave an oral statement to Simmons and "freely and voluntarily" complied with the investigation. [D.E. 13-1] 1. Farland was aware that the USDA could use his statement as

---

[2] In analyzing Pope's motion to remand under section 1442, the court views the facts in the light most favorable to Farland, the non-moving party. See Hagen v. Benjamin Foster Co., 739 F. Supp. 2d 770, 778 (E.D. Pa. 2010); Booth v. Furlough, Inc., 995 F. Supp. 629, 630 n.1 (E.D. Va. 1998); see also Kokkenen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).

2

evidence in the investigation. See Resp. at 5; [D.E. 13-1] 1. Following Farland's statement, Simmons memorialized the conversation in writing and presented the statement to Farland for signature. See Resp. at 5. Farland signed the statement, and Simmons used Farland's statement in Pope's FSA administrative proceeding. See id.; [D.E. 13] 2. Farland's "only participation [in the USDA investigation] was providing statements to the USDA [i]nvestigator based upon USDA guidance and direction." Resp. at 5–6; [D.E. 13] 1.

On November 20, 2018, the USDA terminated Pope's employment based in part upon Farland's statement. See [D.E. 13] 3; [D.E. 13-3]; [D.E. 13-4]. Pope unsuccessfully challenged her termination in the Equal Employment Opportunity Commission and the Merit Systems Protection Board. See Resp. at 6; [D.E. 13-1] 4. Pope then filed this lawsuit against Farland.

II.

The federal officer removal statute, 28 U.S.C. § 1442, provides:

(a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) the United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of revenue.

28 U.S.C. § 1442(a); see Mayor & City Council of Baltimore v. B.P. P.L.C., 952 F.3d 452, 462–63 (4th Cir. 2020), petition for cert. filed, (March 31, 2020) (No. 19-1189); Northrop Grumman, 865 F.3d at 188; Sawyer v. Foster Wheeler LLC, 860 F.3d 249, 254 (4th Cir. 2017). The "basic purpose" of section 1442 is to protect officers and agents of the federal government from state courts that may be hostile to federal agents, federal law, or the actions of those agents enforcing federal law. Watson

3

v. Philip Morris Cos., 551 U.S. 142, 147, 150 (2009); Willingham v. Morgan, 395 U.S. 402, 406 (1969); Maryland v. Soper, 270 U.S. 9, 32 (1926); Mayor & City Council of Baltimore, 952 F.3d at 461–62; Sawyer, 860 F.3d at 254. Additionally, the statute provides "a federal forum for a federal defense," particularly official immunity defenses. Ripley v. Foster Wheeler LLC, 841 F.3d 207, 210 (4th Cir. 2016); see Watson, 551 U.S. at 151; Willingham, 395 U.S. at 407; Mayor & City Council of Baltimore, 952 F.3d at 461–62; Sawyer, 860 F.3d at 254.

A private individual defendant in a state court action may seek removal under section 1442. See, e.g., Watson, 551 U.S. at 147; Mayor & City Council of Baltimore, 952 F.3d at 461–62; Sawyer, 860 F.3d at 254. The private defendant must show: "(1) that it acted under a federal officer; (2) that it has a colorable federal defense; and (3) that the charged conduct was carried out for o[r] in relation to the asserted official authority." Sawyer, 860 F.3d at 254 (quotations and citations omitted); see Watson, 551 U.S. at 151–52; Jefferson Cty. v. Acker, 527 U.S. 423, 431 (1999); Mesa v. California, 489 U.S. 121, 128–29 (1989); Willingham, 395 U.S. at 406–07; Davis v. South Carolina, 107 U.S. 597, 600–01 (1883); Mayor & City Council of Baltimore, 952 F.3d at 463; Northrop Grumman, 865 F.3d at 186; Ripley, 841 F.3d at 209–10. Section 1442 must be "liberally construed to give full effect to the purposes" for which it was enacted, Colorado v. Symes, 286 U.S. 510, 517 (1932), but section 1442's "broad language is not limitless." Watson, 551 U.S. at 147; see Mayor & City Council of Baltimore, 952 F.3d at 461. Whether a party properly removes within the limits of section 1442 is a "mixed question of law and fact." Int'l Primate Prot. League v. Tulane Educ. Fund, 500 U.S. 72, 89 (1991).

In Watson, the Court addressed the limits of section 1442 concerning a private party "acting under" a federal agent. See Watson, 551 U.S. at 145. There, two individual plaintiffs sued a tobacco company for unfair and deceptive business dealings based on the tobacco company's claim that its

4

cigarettes are "light." See id. at 146. The tobacco company removed the action to federal court under section 1442, and the district court declined to remand. See id. In declining to remand, the district court held that, because the tobacco company followed a government agency-imposed method of testing its cigarettes, the company was "acting under" a government agency. See id. On appeal, the Eighth Circuit affirmed the district court. See id. In addition to the reasons that the district court cited, the Eighth Circuit also cited the government agency's "detailed supervision" of testing cigarettes. See id. The Eighth Circuit then compared the factual circumstances facing the tobacco company to cases where courts construed section 1442 to permit government contractors "heavily supervised" by government agencies to remove actions under section 1442. Id. at 147.

The Supreme Court reversed. See id. The Court recognized that "the words 'acting under' are broad," but subject to limits found in the "text's language, context, history, and purposes." Id. Although Congress revised section 1442 on numerous occasions, the revisions did not affect the scope of the phrase "acting under." See id. at 147–49. The Court's precedents recognize removal for private individuals "who lawfully assist the federal officer in the performance of his official duty," or "if [the private individual] w[as] authorized to act with or for federal officers or agents in affirmatively executing duties under federal law." Id. at 151 (quotations and alteration omitted); see City of Greenwood v. Peacock, 384 U.S. 808, 824 (1966); Davis, 107 U.S. at 600. As for the text of section 1442, the word "under . . . involves acting in a certain capacity, considered in relation to one holding a superior position or office." Watson, 551 U.S. at 151 (quotation omitted). Moreover, "acting under" a federal officer "typically involves subjection, guidance, or control" and "an effort to assist, or to help carry out, the duties or tasks of the federal superior." Id. at 151–52. (quotation and alteration omitted). A private individual's mere compliance with a law, rule, or regulation is

5

insufficient to remove under section 1442. See id. at 152; Mayor & City Council of Baltimore, 952 F.3d at 462.

In Watson, the Court held that the cigarette company did not "act under" a government agency when the tobacco company complied with cigarette-related regulations. See Watson, 551 U.S. at 145. Detailed regulatory schemes, without more, only require compliance with the law, not action under a federal officer. See id. at 153. Importantly, the cigarette company lacked a contractual, monetary, employment, or agency relationship with the government. See id. at 153–57. Thus, the cigarette company lacked a "special relationship" to the government wherein the government agency delegated its authority to the private party. See id.; cf. Isaacson v. Dow Chemical, 517 F.3d 129, 137 (2d Cir. 2008).

In Isaacson, the United States Court of Appeals for the Second Circuit analyzed Watson and held that a "special relationship" exists when a company contracts with the government to produce a product (such as Agent Orange), the contract delegates authority from the government to the company, the company complies with the government contract, and the government, absent the company's efforts, would have to produce the product on its own. See Isaacson, 517 F.3d at 137; cf. Watson, 551 U.S. at 153. The Fourth Circuit and other circuits follow the principles in Isaacson. See Mayor & City Council of Baltimore, 952 F.3d at 462–63; Sawyer, 860 F.3d at 255; Hurley v. CBS Corp., 648 F. App'x 299, 303–04 (4th Cir. 2016) (per curiam) (unpublished); see also Ruppel v. CBS Corp., 701 F.3d 1176, 1181 (7th Cir. 2012); Bennet v. MIS Corp, 607 F.3d 1076, 1088 (6th Cir. 2010); Genereux v. American Beryllia Corp., 577 F.3d 350, 353–57 & n.9 (1st Cir. 2009); Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 399 (5th Cir. 1998).

Private parties acting as government informants and other cooperators also may remove actions under section 1442 in certain circumstances. For example, when a person wears a wire and

participates in an FBI "sting operation" to target an individual in an ongoing federal criminal investigation, and the person gets sued for such conduct, the person may remove the action under section 1442. See Venezia v. Robinson, 16 F.3d 209, 210–12 (7th Cir. 1994); see also Reiser v. Fitzmaurice, No. 94 Civ. 7512 (CSH), 1996 WL 54326, at *6–7 (S.D.N.Y. Feb. 8, 1996) (unpublished). Similarly, when a telephone company either wiretaps or facilitates the wiretapping of telephone calls "strictly and solely at federal behest," and the telephone company gets sued for such conduct, the telephone company may remove the action under section 1442. Camacho v. Autoridad de Telefonos, 868 F.2d 482, 486 (1st Cir. 1989). Likewise, when a state police department produces investigatory files to a U.S. Attorney conducting a federal criminal investigation, and the state police department gets sued for such conduct, the state police department may remove the action under section 1442. See United States v. Todd, 245 F.3d 691, 692–93 (8th Cir. 2001).

Farland cites Isaacson and argues that he was "acting under" the USDA investigator because the investigator "obtained his statements and directed his cooperation as part of the federal employment misconduct investigation." [D.E. 12] 11. Specifically, Farland asserts that the investigator's directions to Farland when gathering his statement, coupled with a "special relationship" of witness to investigator, warrants removal under section 1442. See id. at 11–12.

The court rejects Farland's argument. In Isaacson, the contractual relationship between the government agency and the defendant was critical to the Second Circuit's holding. See Isaacson, 517 F.3d at 137. Moreover, unlike the Agent Orange that the companies in Isaacson manufactured, Farland did not produce something (i.e, a statement to investigators) that the government otherwise could produce on its own. Cf. Isaacson, 517 F.3d at 137; Sawyer, 860 F.3d at 255. Furthermore, unlike Isaacson, Farland has not demonstrated an analogous "special relationship" with the USDA

7

investigator. Cf. Isaacson, 517 F.3d at 137. Moreover, Farland's voluntary statement to the USDA investigator did not require the investigator to delegate government authority to Farland. Cf. id. Finally, Farland's relationship with the USDA investigator was not that of an inferior to a superior, an agent to a principal, or an employee to an employer. Cf. Watson, 551 U.S. at 156–57; Mayor & City Council of Baltimore, 952 F.3d at 463–68.

The court also rejects Farland's reliance on the cases concerning government informants or cooperators. See [D.E. 12] 11–12. Those cases involved an ongoing federal criminal investigation. See Todd, 245 F.3d at 692; Venezia, 16 F.3d at 210; Camacho, 868 F.2d at 486; Reiser, 1996 WL 54326, at *2. Even assuming each individual in those cases "assisted" the government "freely," a marked difference exists in the level of assistance provided and the nature of the investigation. In Venezia and Reiser, the government agents directed the individuals to wear a wire, told the individuals who to target, and told the individuals how to target the subjects of the criminal investigation. Cf. Venezia, 16 F.3d at 211; Reiser, 1996 WL 54326, at *6. In Camacho, the federal agents targeted a specific individual's phone line. Cf. Camacho, 868 F.2d at 484. In Todd, the government agents requested criminal investigation files. Cf. Todd, 245 F.3d at 692. In contrast, Farland gave an oral statement "freely and voluntarily" to the USDA investigator. [D.E. 13-1] 1. Unlike the state police departments in Todd, Farland is a private citizen. See Todd, 245 F.3d at 692. Unlike the informants in Reiser, Farland did not provide his statement to the USDA investigator under a cooperation agreement with the investigator. See Reiser, 1996 WL 54326, at *2.

Farland's assistance is more closely analogous to an individual appearing as a witness before a federal grand jury. See Brown & Williamson Tobacco Corp. v. Wigand, 913 F. Supp. 530, 531 (W.D. Ky. 1996); Kaplansky v. Associated YM-YWHA's of Greater New York, Inc., No. 88 CV

8

1292, 1989 WL 29938, at *2 (E.D.N.Y. Mar. 27, 1989).³ In Brown, the defendant removed a civil action that his former employer filed against him for fraud, theft, breach of contract, and breach of fiduciary duties. See Brown, 913 F. Supp. at 531. In Brown, the defendant based his removal on section 1442 and cited two federal grand jury subpoenas that required him to "cooperate[] with federal officials" by testifying before federal grand juries. See id. The district court held the removal improper under section 1442. See id. at 534. In reaching that conclusion, the district court noted that the federal grand jury subpoenas did not direct the defendant "to perform official functions as an officer or agent of the government," and the subpoenas did not "transform [the defendant] into a government agent." Id. at 533.

Similarly, in Kaplansky, the defendant's former employer filed a civil action against the defendant for breach of a severance agreement and for libel. Defendant removed the action under section 1442 because he had provided information to the United States Attorney pursuant to a federal grand jury subpoena. Kaplansky, 1989 WL 29938, at *1. As in Brown, the district court in Kaplansky held that a defendant providing information in response to a federal grand jury subpoena does not "act under" a federal official for purposes of section 1442. Id. at *3. Rather, the court in Kaplansky recognized that "[p]rivate citizens are regularly called upon to testify or provide information either voluntarily or under subpoena in federal criminal investigations," but that this fact does not mean the defendant "stand[s] in the shoes of those officers or agents and perform[s] 'official' functions." Id. Thus, the district court in Kaplansky remanded the action. See id.

Farland was not a USDA employee when he was interviewed, and the USDA did not ask him to perform an official USDA function. Moreover, Farland did not become a government agent

---

³ The court does not address whether Farland's statements to the USDA investigator are privileged. Farland can make that argument in state court, and the state court can address it.

9

through his cooperation with the USDA investigator. Furthermore, the investigator's relationship to Farland cannot be characterized as a "superior" to an "inferior." Thus, Farland did not "act under" a federal officer when he was interviewed. See Watson, 551 U.S. at 146–47; 913 F. Supp. at 531–33; Kaplansky, 1989 WL 29938, at *2–3. Accordingly, the court grants Pope's motion to remand.

III.

In sum, the court GRANTS plaintiff's motion to remand [D.E. 10] and DISMISSES WITHOUT PREJUDICE defendant's motion to dismiss [D.E. 16] and plaintiff's motion to amend [D.E. 22]. The clerk shall REMAND the action to Wake County Superior Court and close the case.

SO ORDERED. This 10 day of April 2020.

JAMES C. DEVER III
United States District Judge